Next case on the calendar is Jeanty v. Cimarillo et al. Mr. Jeanty, you're up first. You have eight minutes. You can begin whenever you're ready. Good morning, Your Honors. Vladimir Jeanty, Plaintiff Appellant. In regards to Defendants McNamara and Oneida County and the Gatehouse Media Press Defendants, I'm going to rest on my briefs in regards to those defendants. I will try to focus my argument today on the City of Utica defendants and Defendant Daugherty. In that regard, I would like to focus on the malicious prosecution claim, the Brady violation claim, and the denial of fair trial claims. In regards to the malicious prosecution claim, I believe that issue has to go back. And that's based on, obviously, the recent decision in Thompson v. Clark. The malicious prosecution claim in this case, obviously, was summary judgment was granted based on the very issue that was dealt with in Thompson. So I won't speak too much on that issue. In regards to the Brady claim, the district judge granted summary judgment to all defendants in regards to that element. And I believe the district judge was incorrect. One of the main reasons the judge was incorrect is she did not take into account each Brady violation, each Brady element that I alleged in my claim. Specifically, the Brady elements that I raised in my claim consisted of the photographs and statements made by Defendant Daugherty in a recording that was made. And the third piece was the deposition testimony of the district attorney, Scott McNamara, where he stated that Defendant Cerminara admitted to him picking up the substance on the ground, which is the subject of this case. To explain, there was an investigation conducted by Defendants Cerminara, Daugherty, Palladino, and Hagan. These four defendants searched an alleyway after my arrest and after I was taken off the scene. None of these defendants reported the fact that they conducted the investigation in the alleyway. Moreover, none of the defendants reported the result of that investigation, which is that they found loose contraband on the ground, photographed it, and as I alleged, collected it, and thereby charged me with it. This fact was never disclosed. Mr. Ginto, let me ask you, this is the part that I don't understand about the Brady claim. The district court ultimately concluded that it wouldn't have, obviously the photos should have been turned over, right? That's obvious they should have been turned over for your trial, but the ultimate conclusion of the district court was that it wouldn't have affected the jury's decision to convict you in that case, and largely because the photos were consistent with the court testimony of the officer who had testified in the grand jury and at trial that he saw you discarding the cocaine during the chase. So, and you can correct me if I'm wrong, I looked at the photos, the photos show cocaine on the ground, but it's not as if the officer didn't testify to the fact that there was cocaine being discarded during the chase. So how would those photos have changed the jury's verdict if it's consistent with what the officer said? Well, first of all, the photographs are not consistent with what the officer testified to or wrote in his narrative. The officer testified that I was running on the roof and discarding contraband. Right. The contraband referenced in this case is found in an alleyway over hundreds of feet away from the rooftop. The officer testified that he did not see me discard any contraband in that alleyway. That's in his deposition. So any contraband that the officer referred to is simply a bag that he claims that he retrieved when I jumped off a base of a building. But in regards to the substance in the alleyway, the defender did not testify that he ever saw me have anything to do with that substance. The testimony at the trial had no relation to the substance in the alleyway. The testimony at the criminal trial was simply about a bag found at a base of a building. The officer testified that I was discarding evidence of drugs on a rooftop, which was searched, and no drugs were found on the rooftop. And that's testified to at the trial and at the deposition by the investigator who searched the rooftop. So the testimony you're speaking of, again, I just want to make clear, the only evidence that the defendant is serving now testified to at trial is that he found a torn plastic bag at a base of a building. That's it. The substance that I'm speaking of, which is depicted in the photographs, shows loose contraband in an alleyway. And this is the subject of the Brady claim. So that would have changed the criminal trial first and foremost because as a defendant, you're allowed to make motions to exclude evidence. And if that evidence was indeed collected and I was tried using that evidence, that's not allowed in New York State because to be charged with any contraband in an open area, the officer has to testify that he saw me put it there. And he could not testify to that. Their position is they only charged you with what was in the bag, not what was on the ground, that the charges against you were based upon what was still in the bag. Is that wrong? I would guess it is wrong because that's a disputed fact, Your Honor. That's their testimony that we charge you with just what was in the bag. All right. All right. You have, I mean, I said you had eight minutes, but I saw you reserved three minutes for rebuttal. So let's give them a chance and then you'll have your three minutes. Thank you. All right. I think Mr. Oren, you're going first. Thank you, Your Honor. Yes. May it please the court. My name is Zachary Oren and I represent Michael Cerminaro, Peter Palladino, the City of Utica, Mark Williams, Edward Hagan, Adam Howe, Michael Petrie, Daniel Torosano, Peter Scalise, Louis Capri, Joseph Travisani, and First Assistant Corporation Counsel Charles Brown. I can see more than you stuck most of your time. I know. I was worried about that, Your Honor. I was going to lose 30 seconds just with the introduction. But much as the appellant came up here and said, I believe he's raised 10 issues against my client on appeal. And I'm just going to stick with the two issues that he outlined for the court in my limited remaining time. And, of course, I'd be happy to answer any of Your Honor's questions on any of the other issues that he's raised on appeal against my clients. Following, again, my appellant's lead, he started with the question of the favorable termination element on the malicious prosecution claim in light of the Supreme Court decision in Thompson v. Clark, which was handed down April 4th of 2022 after the court had adjudicated the summary judgment motion. Nevertheless, as I said in my briefs, I believe this was a harmless error under Federal Rule of Civil Procedure 61. And the reason for that is this. If you look at the jury instructions and jury charges submitted to the jury, in this case, it was a simple possession case. Whether or not Officer Sermonaro fabricated evidence that the appellant possessed cocaine, the jury ruled that he did not. With such a finding of fact in place, and as I've briefed extensively in my briefs, that establishes both probable cause and arguable probable cause that would entitle Officer Sermonaro to qualify to be convicted. There wasn't a special interrogatory on that, though. You're saying it was implicit in their verdict in favor of your client, right? There was no question was there probable cause or no probable cause, right? The question, Your Honor, you are correct.  But as I quoted in my brief, if you look at both the instructions Judge Sands gave at the beginning of the trial and then her actual jury charge instructions, she specifically lays out that it's a possession case, and that is where the fabrication lies. Again, I could highlight that. There's other elements of fabrication. There's intent. I'm just not sure I can see how I understand the argument that you could necessarily conclude that that jury must have found that there was probable cause when they could have found that there was a lack of intent to fabricate, right? Yeah, they could have found that. Well, no, no. Probable cause wasn't squarely before them is my point. I respectfully disagree with that, Your Honor. If you look at the way the charge and instructions were given to the court, they were just charged on the fabrication element, and that is what was contested if you read the jury instructions. I will go in. I agree with you, Your Honor. There were no special interrogatories submitted to the jury on probable cause. I would highly recommend you read the instructions, particularly the portions that I've highlighted in my brief. And I see I'm already a minute over, but moving very quickly to the materiality of the photographs on the Brady claim. And I would just highlight, for your honors, they show the cocaine scattered amongst the route. They show the torn, knotted plastic bag in the alleyway beside the building where Officer Sermonar recovered it. They show Appellant's rental car with five cell phones in it. They show the scrapes on Appellant's person that he got from the foot chase that went over several buildings and over a fence and down the alleyway. And they show, most importantly, they show Appellant wearing a black shirt with white powder on it. I can't think of any more inculpatory evidence. I would also like to point out. Isn't, though, part of it, though, that it is inconsistent with Sermonar's testimony? I mean, whether or not these individual things that you're highlighting are inherently or suggest culpability to the extent that they do in some way contradict what the officer testified to, doesn't that still have the potential for it to be material? It has the potential for it to be, but that gets into the third element of the Brady claim where the district court ruled on the third element that it was not material. It would not materially change the outcome. And to that point, in the record, on summary judgment, there's six affidavit from the criminal petite jurors, all of which saying we looked at the evidence and we still conclude that the plaintiff is guilty. And importantly, in plaintiff's deposition, he testified that Mr. LeBron was his favorite juror. He concluded that he would still have convicted plaintiff based on the evidence. And the last holdout on the jury, Marcus Phillips, also looked at the photographs and concluded that he would have convicted plaintiffs. So with that, I believe the material element has been established. There's no question of fact in favor of the defendant's appellees. Thank you. Unless your Honor has any further questions. Nope. Thank you. All right. Thank you. Nothing further. I would urge an affirmance. Okay. Mr. Schmidt is next. The county. May it please the court. Good morning, Your Honors. My name is Bill Schmidt. I represent the county of Oneida and its district attorney, Scott McNamara. On this appeal, and I'll keep it very brief since Mr. Gente has submitted based on his brief, our position is twofold and it was sustained by the district court below. First and foremost, the comments made by district attorney McNamara to the media were substantively not defamatory. As a matter of law, they were not defamatory. However, even assuming that the comments could be viewed as affront or despicable or odious, Mr. McNamara had the right to raise the defense of privilege. That shifted the burden to the plaintiff to establish that the sole reason that the comments were made or the defamatory statements were made was because Mr. McNamara didn't like him. Or two, Mr. McNamara, after doing all of his investigation, still believed that they were false but nonetheless made a comment to the media to the contrary. Based on that, Your Honors, we would submit that the district court's determination should be affirmed in all respects as it relates to the county and its defendants. Thank you. Thank you. Next we have Mr. Greideel. Thank you. Good morning. May it please the court. I'm Mike Greideel from Greenbridge Farg, and I represent the Appalachian Press Defendants. I have two very brief issues to address with the court this morning. Our first point is that the district court's carefully reasoned opinion is correct that the news article challenged by the appellant is immunized from defamation liability by virtue of the fair report privilege codified at Section 74 of the New York Civil Rights Law. No less an authority than Judge Sack at page Section 735B1 of the fourth edition of his treatise rejects the very argument. You haven't gotten to the fifth edition, have you? I'm sorry if I'm out of date, Your Honor. I was concerned that I might be. I'm sure I changed that. I should have put that in there. The appellant's argument, as we understand it, is that the statements made by Mr. Schmitt's client that were reported, given to reporter McKellar Parker and published in the newspaper, were false. The theory, again, as Judge Sack's treatise points out and as we brief to the court, is that argument is irrelevant to the application of the privilege, the purpose of which is to enable journalists to report on official legal proceedings without concern over liability exposure because the information imparted from the participants to those proceedings is allegedly false. The second argument that the plaintiff offered below was that we had a duty to investigate whether by looking at additional court records or other information that, according to his argument, didn't fairly portray the post-conviction process. Again, that duty is not imposed as a matter of law. Our only duty was to fairly and accurately report the information disclosed by District Attorney McNamara when he was interviewed by the newspaper. There's no allegation here that District Attorney McNamara didn't make the statements or that they were erroneously or inaccurately published in the news article edition. We also submit that under the reporter's privilege, long recognized by this court under both the First Amendment and as a matter of federal common law, that the district court properly quashed the subpoena issued by the appellant when he was attempting to obtain unpublished journalistic work product, as well as to obtain reporter Parker's testimony after the press defendants had already been dismissed from the case. Other than that, I welcome any questions from the court. Thank you. Thank you, Your Honor. Finally, Mr. Bagley. May it please the court. My name is David Bagley, and I'm here today on behalf of Defendant Sean Doherty, who was granted summary judgment of dismissal by the district court. Then Sergeant Doherty was a patrol supervisor on the day of the arrest in question. He took photographs of the scene, not for purposes of case investigation, but in case use of force should become an issue. The primary claim in this lawsuit against Defendant Doherty is for due process fair trial violation based on a Brady violation due to the photographs not having been provided to the defendant timely. It happened that on the day of the defendant's felony hearing, when the district attorney was instructed to go get all the evidence that was in the records of the Utica Police Department, those photographs had not yet been uploaded, nor had there been a narrative prepared. So they weren't available at the time of the plaintiff's criminal trial. They were actually discovered later in a FOIA request. And that is actually – it could be said to be the triggering event in this whole litigation in some respects. The delay in putting the photographs into the Utica Police Department's records so they could be retrieved would of course – could be at worst viewed as negligent. But under our case law, uniformly cited in all of the decisions that is in our brief, it requires having acted purposefully or intentionally. And there is no evidence that Doherty did that. And the plaintiff himself has actually admitted that he has no evidence that Doherty acted purposefully or intelligently – or intentionally, rather, in uploading the photographs late. The other claims against Sgt. Doherty are – there's no evidence to support them as was set forth in our brief. And I will conclude unless the Court has any further questions on the point. No, thank you. All right, Mr. Genti, you have three minutes reserved for your rebuttal. Thank you. In regards to the city defendant, you remanded Thompson. And Thompson went to trial on probable cause in regards to false arrest. And when that came back here, it went back to the district court. And following that case, the city of New York has filed a summary judgment raising the very same issues counsel is raising here. So at minimum, malicious prosecution should go back if the same process is followed for all people that come before this court. The issues that's going to come up are going to be the very same issues that relate to the Brady violence. All these issues were related to the investigation that occurred after my arrest, which was not reported by four police officers. They had a duty to report their investigation and the result of that investigation. The photographs and what they depicted, I was entitled to that information. And my attorney and I were entitled to the use of that information at trial. And that didn't happen. Counsel, in regards to the trial, counsel entered into a stipulation as to all the elements of a denial of fair trial claim. The only element I had to prove in that trial was the fabrication element itself. And there, I believe that actually the city of New York controls, which is all I had to prove that is that there was an omission in defendant Doherty's narrative. And that was proven at the trial based on the fact that the document that Michael Sermonau provided omitted the investigation that he participated in. Where he found, along with defendant Doherty, the substance on the ground. And they photographed it. He specifically testified at the deposition that they did not collect that substance off the ground. But that is a disputed fact. So, in regards to Doherty, Doherty's counsel provided an affidavit which explains pretty much what counsel said. All the reasons as to why he took the photographs, why he did this and why he did that. Those are just explanations. There are disputed issues because Sean Doherty was aware of the investigation that he called for. What was found and that the photographs were taken and that Michael Sermonau was in the photographs. And Sermonau testified at the criminal trial that there were no photographs. So, Sean Doherty was aware of this narrative. Did nothing to correct it and he himself never felt a narrative explaining his actions or the result of his investigation. So, the affidavit he provides doesn't help him. It actually explains how he substituted his judgment for what the prosecutor would have done had he turned that information over to the prosecutor. It was not his decision to make as to whether or not he should give the information that he had to the prosecutor. I see my time's up. Thank you. Thank you, Mr. Gentry. Thank you, counsel. We'll reserve decision. Have a good day. I might comment that Mr. Gentry, you did an extraordinary job for a pro se. If it's not too late, you may consider law school. Thank you, Your Honor. Have a good day. All right.